Good morning, Your Honors. This is an issue preclusion case. At Maciel's criminal sentencing, the government insisted upon having the district court find whether or not Maciel intended to evade his taxes. They lost. He found that he did not intend to evade his taxes. At the follow-on tax court proceeding, Maciel moved for summary judgment on the strength of the judgment. He did not evade his taxes. The tax court denied summarily his motion for summary judgment, had a trial, and found that he intended to evade his taxes. This is a classic case of inconsistent judgments. And we've ---- The procedure was quite different, was it not? I mean, a sentencing hearing is essentially I read the pre-sentence report, I hear the arguments of counsel, I give Mr. Maciel an opportunity to speak his piece in aliquot, whereas in the tax court you had a full-blown trial with witnesses and tons of exhibits and findings of fact and conclusions of law. Doesn't that make a big difference in terms of our assessment of the factors of whether race judicata apply? Well, that can make a difference. The procedural differences in the two proceedings under the Park Lane hosiery case, the Supreme Court said that can make a difference. The real issue was whether it did make a difference. Can the government show that because of the procedural differences it was somehow prejudiced at the sentencing hearing? The plea agreement is ---- Excuse me. I just wanted to add into the mix another question on the same issue, and that is it appears that at least a couple of our sister circuits have not accepted the argument that you're making now in somewhat similar circumstances. Are you aware of any Yes. In terms of actual adoption ---- Issue preclusion from a sentencing. By holding, no, although I believe that Monarch funding does allow that. I'll get to Monarch funding in a minute. I think the Second Circuit has undercut its decision there. I'm not sure I heard the answer. That is to say, what you're arguing for is virtually automatic issue preclusion, and you're saying that the Second Circuit supports that, or am I misunderstanding? No, I'm not. No, Judge Fletcher, I'm not arguing for automatic issue preclusion. I'm arguing that the standard four-element analysis of issue preclusion should apply to sentencing hearings as it does to any prior litigation proceeding. But then what do we do with Judge Talmon's question, which is to say the procedures and the incentives of the parties during those procedures are really very different in sentencing compared to a later civil litigation over fraud? Well, they are and they aren't. In this case, it was the government that insisted on bringing the intent to evade question before the district court at his sentencing. But please ---- Well, if I insist, what you mean is that the government sought a determination of fraud, yes. Yes, because they wanted more time out of your client. That's right. But in the other case, now we want money. That's different. We want ---- because aren't the fraud penalties 100 percent? It's 75. 75. Okay. We give you a 25 percent break. Well, with interest, there's probably ---- With interest, yeah, we'll get it back. Okay. And I've lost my train of thought. Well, my question was the motivation. Is there a difference in the motivation? In the one case, what the government is trying to do is to extract blood out of your client. In the other case, it's just money we're fighting over. And so the incentives are different in the sense that we want more time in one, and now we want to get serious and get money in the other. Well, I don't know how much more serious you can get than going to jail. I mean, that's more serious than money. My experience as a defense lawyer was you fought a heck of a lot harder over money sometimes than you fought over time. But we'll leave that for another, you know. But even the Second Circuit has ---- I think, I believe it was the Second Circuit has acknowledged that the government's shifting incentives at the sentencing hearing do not affect the applicability of issue of preclusion. The government may not, for whatever reasons it chooses, present full bore its case at the sentencing hearing. But that's not really the issue. The issue is whether or not it had a full and fair opportunity to present that issue. What if they hadn't presented it at all? Then presumably this case could go forward. So your client would stand convicted, and they could ---- If the agreement had said, we recommend sentencing under the section that says no fraud or ---- Yeah, or just had been silent about it. Well, then I don't think there would have been a decision on the merits. I think that in that case it would not have been actually litigated. And any opining that the Court might have done, sua sponte, on whether or not Maciel intended to evade his taxes would not be necessary to the decision, which is exactly what happened actually in the Monarch funding case. The district court looked at the pre-sentence report even though the government hadn't asked for an enhancement and said, boy, this looks like fraud to me, and I'm going to depart upwards above the guideline. I'm giving your client more. Well, I think that was a risk, and that is exactly why it was important at the sentencing hearing for there to be a determination by the Court of whether or not he intended to evade taxes. What I'm suggesting is the parties don't say anything about it at all, that they like the guideline range that the probation officer calculates, but that the Court, sua sponte, decides to give. Would you still argue in that case that the government would be collaterally assigned? No, I wouldn't, because it would not have been actually litigated. No, it would not have been the same. True, the opportunity would have been the same, but it would not have been actually litigated, and the judge's remarks would not have been necessary to the decision because that was not an issue joined before him. In this case, the PSR specifically says that the U.S. the sentencing guideline calculation will be made by the Court after consideration of the PSR and evidence presented at the sentencing hearing. They joined it, they insisted on this dispute, they litigated it, and they lost. True, that deals with more than just a question of fraud, doesn't it? I mean, that provision in the plea agreement refers to everything that goes into the sentencing proceeding. Yes. Okay, including criminal history and mitigating factors as well as aggravating factors, correct? Could you please describe what actually took place at the sentencing hearing, like how many months of testimony and so on? Well, I was not his counsel at the criminal case. Nonetheless, could you simply describe the nature of the actual proceeding that took place, the proceeding that you claim entitles your client to collateral estoppel? My understanding of this is fairly brief. Now, your understanding, that's usually a weasel word. Could you simply describe it? I mean, you've read the record, so what is it? Well, the judge considered the PSR. The prosecutor made a statement about disagreeing with certain portions of the PSR. Maciel's counsel made certain statements about disagreeing with the PSR and explained a series of facts considering why Maciel should be found not to have intended to evade his taxes. And was there any testimony taken that supplemented the testimony at trial as to intent to evade? I'm sorry, supplemented the testimony at trial? Well, there was testimony at trial. This is to say this was... At the sentencing hearing. No, at the criminal trial. It wasn't a trial. It was just a plea. It was just a plea, so there was never a trial. There was never a criminal trial. So we don't even have any testimony at trial. That's correct. So all we have is an adjudication of non-payment of taxes. That's to say, you don't need fraud to get the guilty plea. That's to say, he didn't plead guilty to fraud. That is correct. And so the only proceeding we have is just sort of PSR and then argument about PSR, and you want collateral estoppel out of that? Yes, because the government wanted to send Mr. Maciel to jail, and Mr. Maciel had a very high interest in not going to jail. So it was very important to him. But for issue preclusion or collateral estoppel in the old-fashioned terminology, what is required is that it was actually litigated and decided. It doesn't sound like we had much actual litigation. Well, that's going to split a very fine hair. Well, no, I mean, that's the requirement, actually litigated and decided. Yes, but actual litigation... Well, those are actually two separate requirements. One is actual litigation, and parties can litigate a little or full-blown. In this case, the government decided to litigate a little. They had the entire boxes of records that they ultimately used in the tax court before he was even charged criminally. All of their discovery had been done. They could have called a witness. They could have called Maciel. Yes, he could have raised a statement. But I'm afraid that goes to the point that Judge Tolman made, which is to say incentives to litigate. Here we are in a sentencing proceeding. For whatever set of reasons, the government decides they don't want to turn the sentencing proceeding into a three-week trial. I think I can understand that. Yes. I can, too. But... So we've got different incentives, which is one of the ingredients as to whether or not you get collateral estoppel. Well, no. If you just suggested that the shifting incentives is a reason to deny collateral estoppel, I believe that is not, that is exactly the opposite of what the Second Circuit has said in Monarch Funding. They said that the government's shifting incentives do not deteriorate from the availability of collateral estoppel. That's their decision, but it doesn't... Whatever the Second Circuit said, it said that the standard operation of collateral estoppel, and I'll just give you, I'll take it and give you it in a different setting, let's say you litigate something in small claims court as to whether or not there's liability when the total liability is $2,000. And because the total liability is very low, well, you only litigated a little bit. You have very little incentive. Well, okay, all of a sudden, the same question comes up against me, but now I'm in Superior Court and it's $100 million against me. The incentives to litigate are different. There is no way there's collateral estoppel coming out of the small claims court because all of a sudden I have much more incentive to litigate. The government, the first time around, at least by hypothesis, has very little incentive to litigate, and now you're trying to hold it against them here when they have a lot of incentive to litigate. That's my point. In the small claim, in your hypothetical, are the parties the same in both those cases? Well, you don't necessarily need that for issue preclusion because you can get non-mutual. So the question of different incentives remains the same. Doesn't matter. Well, I, I, I, respectfully, Your Honor, I disagree. Well, let's assume for the purpose of the hypothetical that they are the same. Because I've still. You are saying that I think that the second case is going to be precluded. Even if it's the $2,000 versus the $100 million in, in Judge Fletcher's hypothetical. I think it's entirely possible that the second case could be precluded. You've got the same parties, assuming it's the same legal issue, or the same issue involved. Does it make a difference that, Mr. Kirsch, that, that the original sentencing proceeding was premised upon your client's plea to tax evasion, which doesn't necessarily require intent to defraud, simply the, the subscribing and filing of a knowingly false tax return. And that's what he's going to the sentencing proceeding on. The issue that we're concerned with here is really an aggravating factor. Is he going to get extra time on the punishment that he's otherwise looking at for the criminal offense to which he has pled guilty? Because not only, as I guess Judge Zerrika said in sentencing, one of the Watergate defendants, I'm giving you 11 years, 4 years for doing it, and 7 more for doing it on purpose. Okay. That's basically what happened here, is it not? That, that was what the district court was looking at. Should I give him more time? Should I bump that guideline range up because I find that he intended to defraud? And that's what you were fighting for, just an adjustment of the guideline. Yes, but it does focus on that phrase, intent to evade, which the government in this case has stipulated is the identical issue. Isn't that nicely analogized to Judge Fletcher's hypothetical, that in essence it's kind of like litigating once in small claims court, but now we're going to the big tax court and this is where the serious money is? Well, honestly, I think it does. It's very similar to Judge Fletcher's hypothetical, except that the question I asked Judge Fletcher was, are the parties the same? If they are the same, then I think if you elect in small claims court to poo-poo it and you lose, I think you're going to have, you could possibly have serious trouble at the follow-on. Well, the parties are the same in the sense that it's the United States of America, but on the one hand, it's the Commissioner of Internal Revenue who is seeking money in the one proceeding, and it's the Attorney General who is carrying out his authority to enforce criminal laws in the other. Does that make a difference? I don't think it does. I think that in this case, the prosecution basically is at the behest of the Internal Revenue Service. They conduct the investigation, and because of the way the system is, the prosecution is referred over to DOJ. I was going to ask, it seems to me that another point that hasn't really been talked about yet is what exactly the sentencing judge's findings were. Although they were favorable, they weren't quite as cut and dried as your suggestion. After pointing out that there's substantial mitigating evidence, he says, I think on balance, I'm satisfied that the intent here was not primarily to avoid payment of tax. I think the intent may well have been to divert corporate money to personal use, which is not a good thing, as he says. So he goes on to say that he doesn't find that the primary purpose is evasion of payment of the tax, but he never really makes a fully favorable finding either. It seems to be more in the nature of the government hasn't quite carried its burden of proof, which is a little bit different than a fully favorable, say, credibility finding after a trial. So how does that affect your analysis? In two ways. First, if the government hasn't carried its burden of proof by a preponderance, then certainly it can't carry its burden of proof by convincing evidence, which is a tax court standard. But second and more important, even though he may not have made the specific finding that I would have preferred to see for purposes of my argument, he, by choosing calculation 2, the only difference between calculations 1 and 2 in the plea agreement is the phrase, intent to evade tax. By choosing calculation 2, his decision is there was no intent to evade tax. Well, no, his decision is that, as I read it, is that it was primarily not 2, which suggests that it was secondarily 2. And so what he was choosing from was not black and white between calculations 1 and 2, but rather, if you will, by, you know, 75-25, that there was some intent there. At least that's how I read his findings. It's not really a selection fully in your client's, you know, abusing the 100%. And I don't know how that affects it. That isn't the actual litigation piece which we've been discussing. It's the what was the nature of the decision. It's true that the ultimate decision was in his favor by the choice of calculation, but it was a little bit more of an equivocal determination in the reasoning of it at least. And maybe that doesn't matter, and I guess that's the question. Does the reasoning to the decision matter or only the decision? That's a good question. There is another spot in the transcript, I believe, where he is a little bit more specific on that finding, and during opposing counsel's argument. I think it's probably the next paragraph. He continues to talk about it, and he gets a little bit more chatty in your client's favor. But there's certainly some equivocation there. Well, I agree. On the other hand, if the fraud in the tax court requires, or for civil tax purposes, a civil fraud penalty, requires a specific intent to evade a tax known to be due, and if I've never really considered the question of if my major objective is something that has nothing to do with evasion of taxes, but maybe there's a little bit over here, does that cut it? I don't know the answer to that. Thank you, counsel. We'll hear from the government. May it please the Court. Frank Sila, representing the Commissioner. This case, I believe, is a good example of why collateral estoppel should be presumed to be inappropriate with respect to sentencing hearings. In this case, the question of fraud or evasion was not actually litigated in the sentencing hearing, couldn't have been litigated in the sentencing hearing, and shouldn't have been litigated in the sentencing hearing. It's clear when you look at the plea agreement, when you look at the transcript of the sentencing hearing, the government had no interest in pursuing the issue of evasion with any serious intent. The plea agreement, the parties agreed that one of two calculations was appropriate under the guidelines. Under either calculation, you had the same result, zero to six months imprisonment. The government agreed that in any event, they would be happy or would agree to home detention in lieu of imprisonment. At the time of the sentencing hearing, the PSR had come in, and the probation office had determined that in computing the tax laws, that they should take account of the evasion for 1990, which was not part of the plea. The government and the parties had agreed just to look at 1991 and 1992, because he had not been charged for 1990, because the statute had run, and just looked at the tax laws for the other two years. And on that basis, had come up with their calculations in the plea agreement. The probation office came in, looked at 1990, threw that in, that increased the tax laws and raised the offense level. The district court erroneously believed that because of that, if he accepted the recommendation, he found himself between a rock and a hard place. On the one hand, he wanted to honor the parties' agreement that Mr. Massell would not have to do time in prison. And he felt that he couldn't do that if he followed the probation report. At the same time... And was that because if he included it, then it would kick it out of, I can't remember what it is, a level C or a level D, and therefore he would be ineligible for home... Well, actually, the district court was mistaken. It's clear from the transcript he believed that he would not be able to give home detention, but the district court was simply wrong. Actually, if he had included 1990 as relevant conduct... He still could have given home detention. He thought he couldn't, so he found himself between that rock. On the other hand, he felt he wanted to be able to order restitution for 1990 to make everybody whole. The way out was for him to determine, well, there's no evasion here, therefore he doesn't have to kick it up, he stays within the lower level. And when you look at the transcript of the hearing, which we set out in our supplemental excerpts of record, pages 12 to 13, you have the... See what the ASUA said about the report. Never really attacked it or pushed it. Never once pushed the issue of evasion or fraud. Simply said, look, we're going to stand by our agreement, we're prepared to go with the lower tax laws, we're prepared to agree to home detention. And when you look at the plea agreement itself, the government... The parties agreed there were two calculations. And at page 114, 115 of the excerpts of record... What's the pagination of the plea agreement? My excerpts are different. It's page 78 of the plea agreement. At the very bottom, the government says, we'll recommend one of the sentencing guideline calculations discussed in paragraph 8 above. It didn't say it was going to push for the higher calculation. It didn't matter. At page 18, I believe, of our brief, we have a little matrix that demonstrates the result of the two calculations. And regardless of whether or not you found evasion or not, you still come out 0 to 6. And that's where the judge came out by finding that there was no evasion. And I think that's clearly what he was trying to do. There was no litigation of that issue in any meaningful sense of the word. Further, it couldn't have been litigated because the procedures are so different. We couldn't have had a full trial. If you're talking tax evasion, you're talking the intent of the person to evade taxes. Presumably, if we wanted to get good evidence of that, we'd want to compel Mr. Mossial to testify. And if he invoked his Fifth Amendment rights to try to get a negative inference from his failure to testify. And, of course, he'd be at risk of perhaps indicating to the district court that maybe he wasn't as honest as he might or he wasn't as cooperative, etc. I mean, a lot of back and forth as to what risk he would be taking were he to testify. We couldn't do that. That procedure's not available. We could not compel him to testify in a sentencing hearing. We couldn't ask for an adverse inference if he invoked his Fifth Amendment right. The federal rules of evidence don't apply. You don't have the panoply of discovery in a sentencing hearing. Which brings me to the third point. You shouldn't have to litigate issues like this in a sentencing hearing. You don't want to turn a sentencing hearing into many trials. I don't know if it's any more difficult than other cases. I'm principally a tax lawyer. But certainly it would be very difficult for any number of reasons. It certainly complicates restitution proceedings in criminal cases, doesn't it? Oh, it certainly does. And, of course, there's been a question historically as to whether you can even order the restitution of unpaid taxes. And that law is still, I think, evolving. I think it stands now, if it's in the plea agreement, you can. And that brings up a good point here about what you want to honor. If you're talking about the plea agreement as a contract of the parties, if you apply collateral estoppel here, you really create a most disturbing situation. Apart from the fraud penalty in the tax court, the real thrust of the collateral estoppel issue was to say, uh-uh, you're too late. The statute of limitations has run. Normal three-year statute. We're talking 1991-92. You know, the statute of limitations is ordinarily three years from the time you file your return. It ran. Their position in this case has been government, you're out of luck. The stat notice was issued more than three years after the returns were filed, it's untimely, you get nothing. And no tolling agreement was ever obtained? What we did have was an agreement, page 6 of the plea agreement, 113 of the excerpts of record, an agreement with Mr. Maciel to agree to pay tax restitution specifically. I agree to cooperate with the Internal Revenue Service by ensuring that I am currently filing all my income tax returns between 1991 and 1997. 90 have fallen out because of the statute. In addition, I will pay any and all taxes due and owing, as well as any and all interest and penalties that may be due, as finally determined by an IRS audit process and any administrative or judicial review process. Now, at the time he agreed to that, the statute of limitations he's trying to invoke now had run. If you apply collateral estoppel in this situation, you undercut what the district court was trying to do, which was to ensure that the government would get its taxes for 1990 as well as 91 and 92. You also I don't know what I should say here. You also eviscerate Mr. Maciel's agreement to pay his taxes. And I don't think, apart from not being able to, we shouldn't turn sentencing hearings into many trials. I think that would be bad policy. The trial before the tax court judge in essence was to carry out the provisions of paragraph 11 to determine what the restitution amount was due and owing. Yes, because after the whether or not the service had in its possession documents at the time of the sentencing hearing everything it needed, it takes time to pull that into the statutory notice of deficiency for civil purposes. The petitioner or the taxpayer, as he did here, is entitled to file a petition for review of those determinations in the tax court. Parties usually stipulate, go to trial, testify, et cetera, as he did here. And I think Mr. Maciel did not raise, because of the fact that it was being done in furtherance of this agreement, he didn't raise the statute of limitations. Oh, he did. Oh, he did. I'm sorry. Why shouldn't he? Let me say, let me say, I don't think, I don't want to overstate, the audit by the service was not in furtherance of this agreement. I mean, that's a separate, that's a separate thing. I'm only pointing out that, you know, by raising the statute of limit, the normal statute of limitations, by invoking collateral estoppel, so you can't, you can't pry fraud, which the service had to do in the civil proceeding to avoid the statute of limitations problem. And he's saying, all of a sudden, you can't do that. The statute's run. You know, you can't, you're now stopped by claiming fraud. Therefore, I'm off the hook. Although what he promised, and this is not inconsistent with what you just said, he promised to pay the taxes 91-92. The government went after him for 90 as well, in the actual civil proceedings, which it was permitted to do, assuming it's fraud. But the government went after, even if you say that there's an agreement here as part of the plea, that he will pay whatever he's owing for 91 and 92, the government's going beyond that agreement. I see what you're saying. I don't regard that as a fatal flaw in your argument. I just want to point out that, to the extent you're relying on the agreement, it does not go to the full extent that the liability now sought. Yeah. I'm not really relying on the agreement. I'm just pointing out the effect, or one effect, one aspect, another reason why it's a matter of policy. It's a fair argument, that is to say, if we were to find that you're collaterally stopped, it eliminates the possibility of carrying out what he did agree to. It's just that this goes beyond what he did agree to. That's true. That's true. That's true. And, of course, apart from the burden, if judicial economy is the touchstone for collateral estoppel, as I understand it to be, to eliminate needless litigation, I think finding collateral estoppel here would have just the opposite effect. It would turn every, at least in the tax theory, most, if not all, sentencing hearings into many trials, prolonging and, I think, adding a great burden to the district courts. I think it would also go a long way toward chilling plea agreements in these cases. I don't think that's in the public interest at all. The only quarrel I have with that statement is I'm not sure there would be many trials. There may be big trials. Well, that's true, Your Honor. Because, I mean, these are not easily settled, and particularly I'm not quite sure how you would handle it in the context of an ancillary criminal proceeding with different rules. Well, I don't know of any rule that says you couldn't even impanel a jury in a sentencing if you wanted to, but you would be writing on a blank slate. It's not done very often. It would be. I mean, this case, as I'm sure the Court is aware, there have been few, if any, cases involving this whole question of collateral estoppel and procedures. And I think for good reason we should be reluctant to turn what is really more like a civil law adjudication procedure where the probation office, as an adjunct of the court, goes out, gets information, puts it in the report, and then puts it before the judge for his or her sentencing determination. And it's not a common law adjudication. It certainly wasn't here. The only comment I might make is that it may be difficult to adopt sort of wholesale what the Second Circuit seems to have done. We may wish to be more nuanced, given that at the time the Second Circuit is writing, they've got a stable set of expectations as to what happens at sentencing, and this seems to change every six months now. You're giving it that long? Let the record show that counsel is biting his tongue, Your Honor. Before you sit down, am I reading paragraph 11 correctly? Did he agree for tax returns through 91 through 97, or is that a typo? Should it be 92? No, I think that's the same copy I have here. That's what he agreed to, apparently. I guess he was – I honestly don't know what happened post-92. 90, 91, 92 were the years at issue, so I'm not – I don't know what happened the other years. I think at that point, unless the Court has any questions. I think we don't. Thank you. Thank you. We'll give you a minute or so for rebuttal, because we used a lot of your time. Let me talk quickly. First, Judge Graber, on page 23 of my brief is Judge Fogel's more explicit statements of lack of an intent. Regarding the matrix that counsel referred to, the plea agreement specifically says that the judge can disregard the plea agreement and, you know, sentence you to anything that's within the guidelines, and if he had done that and found intent to evade and denied a departure and found more taxes, he could have gone to a place where he would have had to have incarceration. But the simple answer to this, and the potential problem of expanded litigation at sentencing, is the government can be a little bit more careful the way it drafts its plea agreements. It shouldn't insist on one of two guidelines. It can charge under tax evasion, 7201. Well, it did get your client to agree that he would pay any taxes and penalties assessed for 91 and 92. After any appropriate audit and judicial – including judicial proceedings, it's possible that the tax court could have said the government is collaterally estopped from finding fraud, statute of limitations, you don't owe it. He could have – the court could have come up with an entirely different thing, conclusion as to how much he owed. The agreement doesn't say how much he owes. He is collaterally estopped as to the amount of the deficiency and the tax in the two years he pled. That's no argument there, unless, of course, there's no fraud. He's collaterally estopped to argue the amount. In this case, the government forced the district court into making this decision. It didn't have to do it. It could have said the government is saying it doesn't matter which of these two guidelines calculations applies here because the same sentence is going to happen either way. Well, if that's the case, then why didn't they just say, okay, fine, got another calculation number two? It wouldn't have made a difference in terms of the sentence or the amount or any of that, and we wouldn't be here today because there would have been no potential collateral estoppel issue. Thank you, counsel. You've more than used your time and I think we understand your position. Thank you, Your Honor. We appreciate the arguments of both counsel. The case just argued is submitted.
judges: Graber, W. Fletcher, Tallman